# Fidelity Insurance Trust & Safe Deposit Company *v.* Sampson.

*Decedent's estates—Real estate—Mortgage — Sheriff's sale—Distribution— Executors and administrators.*

Under the Act of February 24, 1834, section 33, P. L. 70, the proceeds of a sheriff's sale of real estate of a decedent made seventeen years after his decease under foreclosure of a mortgage given by him in his lifetime, are to be distributed to the devisees of the decedent, or their mortgagees, and are not to be paid to the executor of the decedent to be distributed under the direction of the orphans' court.

Argued March 28, 1904. Appeal, No. 58, Jan. T., 1904, by Charles Benjamin Wilkinson, from order of C. P. No. 3, Phila. Co., March T., 1893, No. 341, sustaining exceptions to auditor's report in case of Fidelity Insurance Trust & Safe Deposit Company, Trustee, v. James S. Sampson. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and THOMPSON, JJ. Affirmed.

Exceptions to report of Alexander P. Colesberry, Esq., auditor.

The facts appear by the opinion of the court which was as follows:

Having carefully examined the report of the auditor in this matter, and the briefs submitted, we have reached the conclusion that the learned auditor was wrong in awarding the balance of the fund to Charles B. Wilkinson, the surviving executor of James S. Sampson, deceased, on his giving bond to the satisfaction of the court conditioned for the legal distribution of such money.

The auditor felt himself bound by the 33d section of the act of assembly of February 24, 1834, and has decided that the court of common pleas has no jurisdiction to distribute the fund and that it must be paid to the executor of the decedent and be distributed by the orphans' court.

The question involved is an interesting one and can be considered after a brief statement of the facts of the case. James S. Sampson was the owner of a farm. In the month of November, 1885, he mortgaged the farm to the Fidelity Trust Company. Three months thereafter he died. By his will Sampson left his property, real and personal, to his widow for life, remainder to his children. In 1890 Sampson's executors filed their first and final account, which was adjudicated. After this the real estate in question, the farm, came into the possession of the widow and children of the decedent. The widow is dead. On June 21, 1896, the Commonwealth Trust Company took a mortgage secured upon three fourths of the shares of the six children of Sampson; the said three fourths interest have by mesne conveyances become vested in two of the children.

On January 5, 1903, seventeen years after Sampson's death, the mortgage given by him during his lifetime to the Fidelity Trust Company was foreclosed. After payment of the principal, interest and costs of the mortgage to the Fidelity Trust Company, a surplus was left, which was referred to the learned auditor for distribution.

There are no debts of record of James S. Sampson, deceased.

The fund was claimed by the executors of Sampson and the Commonwealth Title & Trust Company claimed its proportionate share of the fund as mortgagee, and that the award should be directly to it.

There were some minor claims which do not seem to have been in dispute, and awards were made to them by the learned auditor.

The question involved is, whether at the time of the sale on January 5, 1903, the real estate, which was subject to the mortgage of the Fidelity Trust Company, was the real estate of the decedent or that of the decedent's devisees or their grantees. If it was still the real estate of the decedent, the learned auditor was correct in his conclusion of law. If not, he should have awarded to the Commonwealth Title & Trust Company directly its proportionate share of the fund. The question is, in our opinion, not a novel one, but was ruled in Hutchins v. Terradill, 21 Legal Int. 300. There, as in the case at bar, the question arose upon the exceptions to the auditor's report. The opinion of the court was delivered by SHARSWOOD, P. J., and is as follows : " The questions presented on these exceptions may be briefly stated thus : Where land is sold under a mortgage subject to which it was held by a person who has been dead more than five years, and against whose estate there are no debts of record, is the balance of the proceeds, after discharging the mortgage, to be paid to the administrator of the decedent or to the heir of his alienee ? I state the question rather more broadly than the facts of the case are reported by the auditor. It is true that by the 33d section of the act of 1834, it is provided that 'in all cases where property, real or personal, of a decedent is sold upon execution, and more money is raised than is sufficient to pay off liens of record, the balance shall be paid over to the executor or administrator for distribution.' But by the 24th section of the same act, as interpreted in Kerper v. Hock, 1 Watts, 9, and the long line of cases following that decision, at the expiration of five years land becomes discharged, in the hands of the heir, from liability for the debts of the decedent, not debts of record. It would follow then, that the land ceased for all purposes to be the decedent's estate, and becomes the estate of the heir. A judgment against the executor or ad-

ministrator after the time has elapsed under the sale by the sheriff, confers no title on the purchaser: Bailey v. Bowman, 6 W. & S. 118."

The case of Hutchins v. Terradill is almost on all fours with the case at bar, the only difference being that in the case at bar the mortgage was given by the decedent, and in the case of Hutchins v. Terradill by the vendor of the decedent. We do not see, however, how this can make any difference. A judgment obtained upon either of such mortgages is the same, and it is probable that Judge SHARSWOOD, in deciding Hutchins v. Terradill had in mind the case not only of a mortgage given by decedent's vendor, but also one given by decedent himself. In his opinion he says, "I state the question more broadly than the facts of the case are reported by the auditor," and refers to the land being held subject to a mortgage, which applies equally to the land held subject to a mortgage of the decedent's making or of his grantor's.

The auditor has relied upon two authorities which he thinks overruled the decision and reasoning of Hutchins v. Terradill. One is the case of Matlack v. Roberts, 54 Pa. 148 (1867). The facts of that case, as given by the auditor, were as follows: William Roberts, by his will, proved May 4, 1841, devised his lands to his two sons, Joseph and John, charged with legacies. In August, 1863 (twenty-two years after the probate of the will), the real estate of the testator was sold by the sheriff on a judgment for a debt due by the said testator in his lifetime. The proceeds were brought into court and distributed by the auditor of the said court and confirmed. No question of jurisdiction was raised in this case in the court below. But, upon an appeal to the Supreme Court upon other matters, the court said: "The effect of that sale was to vest a title in the purchaser free and discharged of the devise, and to substitute the proceeds of the sale for the land. The auditor made distribution . . . . The act of February 24, 1833, section 33, provides that the surplus proceeds of a sale upon execution shall be paid to the executor, who shall give security therefor before receiving the money. The proviso then follows that such money shall be distributed as the real estate of which it is the proceeds would have been. This was manifestly intended as the rule to govern the executor in making the distribution. Here the law was so

far disregarded that the surplus was not paid to the executors, but it was actually distributed as the real estate would have been," etc.

As is pointed out in the argument of counsel for the exceptants, there is manifest error in the report of this case. The real estate of the testator was sold in 1843, and as William Roberts died in 1841, the sale was within five years of the death of decedent. In the report of this case (I cite from the written argument of counsel for the exceptants) the sale is stated to have taken place in August, 1863, but it says the report was confirmed February 9, 1844, indicating that " 1863 " was a misprint, and should read " 1843," and a copy of the statement filed in that case, appended as an exhibit to the brief of the exceptants, shows that the sale was had 'in 1843 ; that is, within two years of the death of the decedent.

The auditor also relies upon Shugar's Appeal, 153 Pa. 385. The facts in brief were as follows: Joseph J. Karch died intestate May 22, 1886, leaving a widow and daughter. Letters of administration were granted to widow, who filed two accounts prior to 1890. There were outstanding several debts due by the estate, including testator's mortgage, of about $1,500, which was foreclosed May 19, 1888, the administratrix being the purchaser for $8,150. She paid something on account, received her deed, and gave the sheriff judgment bond for the balance. The question of to whom amount of judgment bond should be paid was then referred to auditor. Upon exceptions to this report McPHERSON, J., after deducting sheriff's costs, cost of audit, amount due the mortgagee and another small claim of $3.76, decreed the balance of the money to the administratrix. The Supreme Court in sustaining the lower court says: " It is manifest that much money has been wasted, and labor incurred in vain, in this attempt to distribute a dead man's estate in the common pleas." The sale was there had within two years of decedent's death, before the accounts of the administratrix had been settled, and before the lien of decedent's debts had expired, and therefore is not a parallel case with the one under consideration. It would have been absurd for the Supreme Court to have considered to whom the fund would have gone had the sale been without the five years from decedent's death when these facts were not before them,

and silence upon this subject merely indicates that it was not considered.

In Kelly's Appeal, 77 Pa. 232 (1874), the facts were as follows : An action of assumpsit was brought against Kelly, administrator of Lafferty, on promissory notes of decedent, the last of which was dated 1863. Upon reference to arbitrators, they found an award in favor of plaintiff for $1,755, part of which, i. e., $650, was contracted prior to 1863. That in 1864 decedent purchased real estate, placing title in name of his wife, and that at least $2,000 of the consideration was paid by decedent out of his own money. Judgment was entered sci. fa. and alias issued bringing in widow and children of decedent, to which no answer being made, judgment was entered thereon. Fi. fa. issued against administrator, widow and children and real estate in name of wife. The real estate was sold under a vend. ex. in 1872, the proceeds paid into court and referred to auditor for distribution, who awarded the fund to the administrator (Kelly). The lower court sustained exceptions and paid judgment creditor. The Supreme Court reversed, WILLIAMS, J., delivering the opinion of the court. The facts of that case show that there was a sheriff's sale of real estate had four years after decedent's death upon a personal judgment obtained subsequent to the death of decedent. In such a case the fund goes to the administrator, because such judgment gives no preference over the general creditors of the decedent, and therefore the funds should be marshalled for the benefit of all creditors.

The decision of SHARSWOOD, J., in the case of Hutchins v. Terradill, supra, seems to have been relied upon by the profession and by the title companies, and the reasoning of the opinion seems to us convincing. Besides, the current of decision, from Guier v. Kelly, 2 Binney, 294, down to the very late case of Bacon's Estate, 202 Pa. 535, established the doctrine in Pennsylvania that, in the earlier cases after seven years, but after the act of 1834 after five years, real estate becomes the property of the heirs or devisees, or their alienees.

Counsel for the exceptants have furnished us with an admirable brief, which would be embodied as part of the opinion of this court, were it not that it might seem to be an affectation of learning. The language of all of the judges in delivering

the opinions of the court could have been cited to show the views which the Supreme Court has taken upon this question.

Thus in Bailey v. Bowman, 6 W. & S. 118, which was an action of ejectment, defendant claiming under sale on judgment against executor of Jackson, obtained after seven years from Jackson's death, plaintiffs being representatives of Jackson, it was held that sale gave no title, and judgment for plaintiff, GIB-SON, C. J., saying : " In the course of a very few years, it is not only possible but common for one who has derived an estate from the bounty or demise of an ancestor to become in an equitable sense a purchaser of it."

In Maus v. Hummel, 11 Pa. 228 (1849), plaintiff claimed an ejectment under a sheriff's sale had on a judgment obtained against the administrator of the owner of the real estate in question. The judgment appears to have been properly revived once, making its lien extend, under the act of 1797, for twelve years from the death of the debtor, but the sale took place shortly after the expiration of twelve years. It was held that plaintiff had no title, COULTER, J., saying : " The lien therefore of the debt in this case extended twelve years from the time of Jackson's death and no longer, and the land in dispute not having been brought into execution within that period, was beyond its power, and the estate had vested in the heir absolutely at the expiration of the twelve years." And referring to Kerper v. Hock, " those and the kindred cases in our books establish that at the end of twelve years from the death of a decedent land not converted or perhaps not in actual process of sale on vend. ex. becomes the property of the heir, liable to his debts and subject to his dominion. The intention of the legislature is not to be doubted. They designed to produce the settlement of estates in a reasonable period, to establish repose and certainty in titles."

In Smith v. Wildman, 178 Pa. 245, which was an action of ejectment brought by the heirs of Smith, defendant claimed title and was in possession under an orphans' court sale allowed on petition for the payment of debts. Smith died in 1862. The sale was in 1872. Held, that the orphans' court lacked jurisdiction, and therefore the sale conferred no title. WILLIAMS, J., delivering the opinion of the Supreme Court, said, inter alia : " In this case the debt was not secured by lien,

and under the act of 1834 it had ceased to be chargeable to the land, but that had passed to the heirs at law absolutely free and discharged from it."

In Bacon's Estate, 202 Pa. 535, the Supreme Court affirmed the report of an auditor, who held that unnecessary delay and expense would be the only result of an award to personal representatives where the lien of debts had expired.

We do not think it necessary to discuss the question of whether there was a trust for the payment of debts. The auditor has not put his findings upon that basis, and the cases seem uniform to the effect that such a trust does not arise under mere power to sell. Authority being needed, however, it will be found in Seitzinger's Estate, 170 Pa. 531, in which DEAN, J., delivering the opinion of the Supreme Court, reviews the case and shows very clearly what the law is.

In Raleigh's Estate, 206 Pa. 451, the opinion of the court being delivered by POTTER, J., the question was considered; and also in Cooper's Estate, 206 Pa. 628, in which case the opinion of the Supreme Court was delivered by BROWN, J.

Since the learned auditor filed his report in this case, the decision of the Supreme Court in Bowman v. Knorr, 206 Pa. 270, has been published. The facts of that case were as follows: During his lifetime Samuel Knorr executed a mortgage on real estate. He died in 1889. In 1900 the mortgage was foreclosed and a balance realized after payment of the mortgage; this balance was paid into the court of common pleas and referred to an auditor for distribution. By the will of Samuel Knorr an interest during widowhood is left to the widow, who is made executrix, with remainder to his two children. Samuel Knorr and wife had, during lifetime, executed an antenuptial agreement which gave same interest to wife as in will, except that it was for life instead of during widowhood, and further, the widow under the antenuptial agreement had power to use the principal. The son's interest was sold at sheriff's sale more than five years after the death of the father, on judgment against the son. More than five years after the death of Samuel Knorr action was taken against the estate of Knorr on his notes, and subsequently judgment was obtained. A judgment was also obtained against the purchaser at sheriff's sale of the son's interest. The claims were (1) executrix of will of

Samuel Knorr, (2) widow of Samuel Knorr under antenuptial agreement, (3) owner of son's interest, (4) judgment creditor of owner of son's interest, (5) judgment creditor of the estate of Samuel Knorr. Suit started more than five years after Knorr's death.

The auditor first disallowed claim No. 5, under the act of 1834, as started too late. He then quotes the 33d section of the act of 1834 in reference to claim No. 1, by the executrix, but refers to the fact that the sale was had eleven years after the death of testator, and therefore disallows claim. Claim No. 2 was disallowed, the auditor deciding that the widow, in probating the will, accepted it, although he leaves open the question of differences between the two documents as to the period of enjoyment of the widow's interest.

In his conclusion of law the auditor said:

"10. The section of the act of February 24, 1834, directing the surplus to be paid to the executor or administrator on the sale of real estate by execution, was intended for the protection of creditors whose claims were liens not of record, and for the protection of other creditors entitled to participate in the fund. There being no such debts and no creditors of the decedent being entitled to participate in the fund, while on the other hand the real estate had vested in the legatees, the fund belongs to the legatees, their heirs and assigns, subject to such measures as may be right to preserve to the widow the income of one third."

As to the difference between the will and the antenuptial agreement, the auditor says:

"The necessity for distinguishing or reconciling the two expressions may never arise. The auditor is of the opinion that they are reconcilable. But in order to protect all parties in such event, the obligation to pay over the principal should be after she should cease to remain the widow of Samuel Knorr, with a proviso that the words are used without prejudice to the right of the wife to claim during life."

And in accordance with the above, distribution was decreed. The court in banc approved of the distribution, except as to the fund held for the widow and directed it to be held for her life. Distribution was therefore made to (*a*) trustees for widow (*b*) owner of son's interest, (*c*) judgment creditors of

owner of son's interest, (*d*) daughter of Samuel Knorr, the testator.

The judgment creditor of the estate, claimant No. 5, appealed, assigning, inter alia, that the award to the children and widow of Knorr, the decedent, was error. The Supreme Court affirmed the decision of the lower court, the opinion being by FELL, J., thereby approving distribution directly to the parties in interest.

The widow also appealed, on the ground that her interest was not to be restricted to a life interest, but should be awarded her directly, without the intervention of a trustee, and so that she might use the principal of it as provided in the antenuptial agreement. The appeal of the widow was sustained by the Supreme Court.

Therefore the Supreme Court adopts the theory of the auditor in that case by ordering the fund distributed directly to the parties in interest, which is precisely the position contended for by the exceptants in the case at bar.

In order to prevent further delay and expense in the matter, we direct that a table of distribution be submitted to the court by counsel, in accordance with the views indicated in the foregoing opinion, without reference back to the auditor. This will enable any party aggrieved to have speedy appeal and final determination of the matter in the Supreme Court.

The exceptions to the report of the auditor are sustained.

*Error assigned* was in sustaining exceptions to the auditor's report.

*Henry C. Esling*, with him *A. J. Wilkinson*, for appellant.

*William E. McCall, Jr.*, and *Charles Carver*, for appellee, were not heard.

PER CURIAM, May 16, 1904:
This judgment is affirmed on the opinion of the court below.